IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HASALEE MIMS, #126 911,          )
                                 )
        Plaintiff,               )
                                 )
v.                               )   CIVIL ACTION NO. 2:19-CV-499-MHT
                                 )                [WO]
THE UNITED STATES, *et al.*,     )
                                 )
        Defendants.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

Hasalee Mims ("Mims"), an Alabama inmate proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971).[1] Mims alleges enactment of "Megan's Crime Law" is an unconstitutional and illegal use of congressional power and  authority and therefore violates the rights of individuals convicted of sex offenses.[2] Doc. 1 at 3. According to Mims, enactment of Megan's Law was illegal because Congress performed "legislative action outside the zone of it['s] original assigned regulatory power of authority under the Commerce Clause where gender violence, murder/rape

---

[1] Federal courts have analogized *Bivens* claims to claims filed under  42 U.S.C. § 1983 which require a showing that defendants acted under color of state law to deprive an individual of his or her constitutional rights. *See Butz v. Economou*, 438 U.S. 478, 498-99 (1978). A claim under *Bivens* must allege facts showing a defendant acted under color of federal law to deprive the plaintiff of a constitutional right. *Bivens*, 403 U.S. at 388.

[2] "In response to the 1994 abduction, rape, and murder of a seven-year-old girl, Megan Kanka, by her neighbor, a convicted sex offender, Congress along with all 50 states enacted laws requiring sex offenders to register their residence with local law enforcement. *See Smith v. Doe*, 538 U.S. 84, 89-90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003). Concerned by Megan's murder and the high number of repeat sex offenders, states enacted these laws for the purpose of notifying the public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes. *See Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 123 S.Ct. 1160, 1163, 155 L.Ed.2d 98 (2003)." *Doe v. Moore*, 410 F.3d 1337,1340 (11th Cir. 2005).

could never be confused with commerce." Doc. 1 at 3. Mims requests the court declare Megan's Law unconstitutional and void. Doc. 1 at 6. The named defendants are the United States, the United States Congress, and the Alabama Law Enforcement Agency. Upon review, the court concludes Mims' complaint is due to be summarily dismissed for lack of jurisdiction.[3]

## II. DISCUSSION

### A.    Standing

1.    *Commerce Clause*

Mims alleges Congress violated the Commerce Clause when it enacted Megan's Law because the statute punishes activity that does not substantially affect interstate commerce. Mims maintains that his complaint:

> . . .is a direct constitutional challenge to the constitutionality of the Congress'[] creation, enactment, and the passing of the Megan's Crime Law, as a by-law off of the Jacob Wetterling[] Law against Children and Sexually Violent Criminal Offenders Act. At Title 17,108 Stat. 2038, as amended, 42 U.S.C. Sect. 14071, in which this particular United States Code is an illegal and unconstitutional use of Congress'[] powers of authority[,] because the laws passed are based exclusively and entirely upon gender related issues of violent criminal activity, such as rape/murder[] [t]hat was passed outside the scope of the Congress'[] power of authority under its eighteen specific, enumerated and delegated powers granted by the Constitution under the Commerce Clause.

Doc. 1 at 3.[4] Mims claims his constitutional challenge to the enactment of "Megan's Crime Law" is based on the fact that the statute violates his rights as an individual convicted of a sex offense.

---

[3] Mims sought leave to proceed *in forma pauperis*. Doc. 2. The court granted Mims *in forma pauperis* status except to the extent he was required to pay an initial partial filing fee. Doc. 3. Mims filed the requisite initial partial filing fee. Doc. 4. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

[4] The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (JWA) was enacted by Congress in 1994. *See Smith v. Doe,* 538 U.S. 84, 89 (2003). The JWA conditioned

Doc. 1 at 3. According to Mims,  Congress exceeded its authority under the Commerce Clause by establishing a comprehensive national system for the registration of sex offenders which is "outside the zone" of its regulatory power. Doc. 1 at 3. Because Congress was not given authority under the Constitution to regulate non-economic activity or pass laws of gender violence crimes under the Commerce Clause, Mims seeks a declaration that Megan's Law is unconstitutional and void Doc. 1 at 6.

The court takes judicial notice of both public records maintained by the Alabama Department of Corrections and Mims' criminal cases' consolidated case action summaries on the Alabama Trial Court System (hosted, respectively, at http://www.doc.state.al.us/inmatehistory and  www.alacourt.com). *See Keith v. DeKalb Cnty*., 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) ("We take judicial notice of [the state's] Online Judicial System.") (citing Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be

---

federal funding for law enforcement on states establishing "programs that require a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense" to register a current address with the state (former 42 USC § 14071(a)(1)(A), as added by 203 Pub L 103–322, 108 U.S. Stat 2038). Megan's Law, an amendment to the JWA, required dissemination of "relevant information" on registered sex offenders to the public by state and local law enforcement officials (codified as amended at 42 USC § 14071[d], as added by Pub L 104–145, 110 U.S. Stat 1345). By 1996, "every State, the District of Columbia, and the Federal Government  had enacted some variation of Megan's Law." *Smith*, 538 U.S. at  90; *see also  Moore*, 410 F.3d at 1340. The Adam Walsh Child Protection and Safety Act of 2006 superseded the JWA. 34 U.S.C. § 20912. Title I of the Walsh Act, referred to as SORNA—the Sex Offender Registration and Notification Act—was enacted  "in response to the vicious attacks by violent predators" in order  to "protect the public  from sex offenders and offenders against children" through "a comprehensive national system for the registration of those offenders."  34 U.S.C. § 20901, *et seq*. Aware that before SORNA, "registration law consisted of a patchwork of federal and 50 individual state registration systems," Congress sought "to make those systems more uniform and effective." *Reynolds v. United States*, 565 U.S. 432, 435 (2012). SORNA "does so by repealing several earlier federal laws that also (but less effectively) sought uniformity; by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements." *Id*. SORNA's criminal penalty provision is found under 18 U.S.C. § 2250 and the sex offender registration requirement is found under  34 U.S.C. § 20913 (effective September 1, 2017).

accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")); *see also Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir.1984). These records reflect Mims was convicted in 1980 of rape in the Circuit Court of Tuscaloosa County, Alabama, which subjects him to the registration and notification requirements for sex offenders. *See* Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"), Ala. Code § 15-20A-1, *et seq.* Mims' conviction records also reflect that he has been convicted of, among other crimes, violating state sex offender registration laws. Mims is confined in the Alabama prison system following his plea of guilty in October 2016, as a habitual offender, to attempted sexual abuse of a child less than twelve which also violated the terms of his probation on his convictions for violations of failing to register as a sex offender. *See State of Alabama v. Mims,* CC-2016-396, *State of Alabama v. Mims*, CC-2011-209, and *State of Alabama v. Mims,* CC-2011-148. *See* www.alacourt.com; *see also* www.doc.state.al.us/inmatehistory (last visited September 5, 2019).

Mims' allegations are not well articulated but he appears to assert that, as an individual convicted of sex offenses, he has been subjected to a violation of his constitutional rights based on congressional action concerning enactment of a comprehensive national system for the registration of sex offenders.[5] According to Mims, Congress performed legislative action beyond its power under the Commerce Clause in controlling the nation's "crimes of gender violence." Doc. 1 at 5.

---

[5] Mims references "Congress's National Megan's Crime Statute" and 42 U.S.C. § 14071. Doc. 1 at 3. Section 14071 was repealed in 2006. SORNA was passed by Congress in 2006 and, as noted, "establishes a comprehensive national system for the registration of [sex] offenders," requiring all sex offenders to register their residence and place of employment using state-based registries." *See* 42 U.S.C. §§ 16901, *et seq.*, (transferred to 34 U.S.C. §20901). SORNA contains a separate provision which subjects persons subject to the Act's registration requirements to federal criminal penalties for traveling interstate and failing to register as a sex offender. *See* 18 U.S.C. 2250(a). It is not clear whether, prior to his current incarceration, Mims registered or was required to register under SORNA or whether, following his release from his current detention, he will be required to register as a sex offender under SORNA although it appears he would be as he has been convicted of a "sex offense" as defined under SORNA. *See* 34 U.S.C. § 20911.

Beyond his contention that Congress allegedly engaged in conduct beyond the powers authorized under the Constitution by enacting laws regarding sex offenders, Mims does not allege much less indicate he has suffered any concrete or particularized injury because of the conduct about which he complains.[6]

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, federal courts have only the power to hear cases they have been authorized to hear by the Constitution or the Congress of the United States, *see Kokkonen*, 511 U.S. at 377, and must inquire into their jurisdiction at the earliest possible point in the proceeding. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Federal courts have an independent obligation to ensure they are presented with the type of concrete controversy on which their constitutional grant of authority is based. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

"Article III, § 2, of the United States Constitution limits the jurisdiction of federal courts to Cases and Controversies, which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citations and internal quotation marks omitted). Both standing and ripeness originate from Article III's case-or-controversy requirement. *Elend v. Basham*, 471 F.3d 1199, 1204–05 (11th Cir. 2006). Although separate doctrines, standing and ripeness share Article III's requirement that "a party must suffer injury or come into immediate danger of suffering an injury before challenging

---

[6] If, by filing this action, Mims actually seeks to challenge the legality of his detention or the constitutionality of a conviction based on the alleged constitutional violations about which he complains, the appropriate vehicle for bringing such claims is through the filing of a petition for habeas corpus relief. *See Wilkinson v. Dotson,* 544 U.S. 74, 78 (2005); *Preiser v. Rodriguez,* 411 U.S. 475 (1973); *see also Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477 (1994).

a statute." *United States v. Veal*, 322 F.3d 1275, 1278 (11th Cir. 2003) (quoting *Kirby v. Siegelman*,

195 F.3d 1285, 1289 (11th Cir.1999) (analyzing ripeness)); *see also Socialist Workers Party v.

Leahy*, 145 F.3d 1240, 1244–45 (11th Cir.1998) (analyzing standing).

> It is by now well settled that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact— an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*United States v. Hays*, 515 U.S. 737, 742–43 (1995) (internal quotation marks and citations

omitted).[7]

Here, Mims alleges no facts to demonstrate he has suffered or will suffer any injury,

threatened or actual, from the conduct about which he complains such as a "personal stake in the

outcome of the controversy as to warrant his invocation of federal–court jurisdiction." *Warth v.

Seldin,* 422 U.S. 490, 498 (1975) (internal quotation marks and citation omitted); *see also S.

Jackson & Son, Inc., v. Coffee, Sugar, & Cocoa Exch., Inc.*, 24 F.3d 427, 431 (2d Cir. 1994)

(citation omitted) (holding that where "the remedy sought is a mere declaration of law without

implication for practical enforcement upon the parties," such relief does not by itself establish a

case or controversy necessary to bestow subject matter jurisdiction). Federal courts are not

permitted to rule upon questions hypothetical in nature or which do not affect the rights of the

parties. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990). This is because courts do

not sit to render advisory opinions. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Nat'l Adver.*

---

[7] "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

*Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (holding that "[s]trict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."). Because Mims fails to establish the first requirement for standing, there is no "case or controversy" under Article III. Mims, therefore, lacks standing to bring his claim in federal court.

Assuming Mims has standing to bring his claim regarding alleged congressional overreach in violation of the Commerce Clause, such claim is foreclosed by *United States v. Ambert,* 561 F.3d 1202, 1210 (11th Cir. 2009). In *Ambert,* the  Eleventh Circuit Court of Appeals  held  the registration provisions and the penalty for failing to register under SORNA (*see* 42 U.S.C. § 16913—transferred to 34 U.S.C. § 20913— and 18 U.S.C. § 2250(a)) do not exceed Congress' power under the Commerce Clause. *See also United States v. Vasquez*, 611 F.3d 325, 330–31 (7th Cir. 2010) (holding that "the statutory aim of SORNA is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered" and that a "rational basis existed under the Commerce Clause for Congress to enact § 2250" . . . and that "§ 16913 is a logical way to help ensure that the government will more effectively be able to track sex offenders when they do cross state lines. To the extent that § 16913 regulates solely intrastate activity, the regulatory means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power.").

2.     *Tenth Amendment*

 Mims also claims the Tenth Amendment "reserve[s] a zone of activity to the state" which Congress may not regulate and that "zone of activity" concerns "control of [state] police powers in public and in the work-place." Doc. 1 at 5. To the extent Mims' attempts to challenge the federal conduct  about  which  complains  on  Tenth  Amendment  grounds  because  of  an  alleged

unconstitutional encroachment of federal power on state sovereignty, such claim is likewise subject to dismissal because it is also subject to Article III requirements.

The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. An individual who seeks to properly bring a challenge under the Tenth Amendment must "show the requisite injury in fact and its causal relation to the action in question." *Atlanta Gas Light Co. v. U.S. Dep't of Energy*, 666 F.2d 1359, 1368 n.16 (11th Cir. 1982). "If, in connection with the claim being asserted, a litigant who commences suit fails to show actual or imminent harm that is concrete and particular, fairly traceable to the conduct complained of, and likely to be redressed by a favorable decision, the Federal Judiciary cannot hear the claim . . . These requirements must be satisfied before an individual may assert a constitutional claim; and in some instances, the result may be that a State is the only entity capable of demonstrating the requisite injury." *Bond v. United States,* 564 U.S. 211, 225 (2011) (internal citations omitted). Here, Mims has not alleged facts suggesting that he has met the standing requirements to bring a Tenth Amendment claim as an individual litigant, *see Lujan,* 504 U.S. at 560; *Sims v. Fla. Dep't of Highway Safety*, 862 F.2d 1449, 1464 (11th Cir.1989) (en banc), and he has "no standing to complain simply that [the] Government is [allegedly] violating the law." *Allen v. Wright,* 468 U.S. 737 (1984).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the complaint be DISMISSED for lack of jurisdiction.[8]

---

[8]Regarding the defendants against whom Mims seeks to bring his complaint, the court notes he would have no *Bivens* cause of action against the United States or the U.S. Congress, *see United States v. Testan*, 424 U.S. 392, 399 (1976) (the United States of America, as sovereign, is immune from suit except to the extent it consents to be sued); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (holding "[a] waiver of the Federal

It is further

ORDERED that **on or before September 30, 2019**, Plaintiff may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which Plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 16th day of September 2019.


___/s/   Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

Government's sovereign immunity must be unequivocally expressed in statutory text . . ."); *Davis v. Passman,* 442 U.S. 228, 235 n.11 (1979) (noting the Speech and Debate Clause of the United States Constitution, Art. I, § 6, cl. 1, renders members of Congress immune for legislative activity), and any claims lodged against the State of Alabama or its agencies would be frivolous as based on an indisputably meritless legal theory. *See Papasan v. Allain*, 478 U.S. 265 (1986) ) (holding that unless the State of Alabama consents to suit or Congress rescinds its immunity, a plaintiff cannot proceed against the State as the action is proscribed by the Eleventh Amendment and "[t]his bar exists whether the relief sought is legal or equitable."); *Holmes v. Hale*, 701 Fed. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)) (holding "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it.").